UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BSE TECH LLC, | : |
| Plaintiff, | : |
| v. | : Docket No. 1:13-cv-10972-FDS |
| ASIA TECH CORPORATION, and FRANCIS COLLIGAN, | : |
| Defendants. | : |

### AFFIDAVIT OF KENT D. SHOOT IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

I, Kent D. Shoot, being duly sworn, depose and state as follows:

1.  I am the Vice-President of Finance of the Plaintiff, BSE Tech LLC (hereinafter "BSE Tech" or the "Plaintiff"), and make this Affidavit in support of the Plaintiff's Motion for Entry of Default Judgment in the above-captioned action. I make this Affidavit based upon personal knowledge, and my information and belief which arise from and are based upon the documents related to this litigation and to the underlying transaction between BSE Tech and the Defendants, Francis Colligan (hereinafter "Colligan") and Asia Tech Corporation (hereinafter "Asia Tech") (collectively the "Defendants"), and upon conversations and communications that I have had with current and former officers and employees of BSE Tech.

2.  According to my understanding, the Plaintiff is moving for the entry of a default judgment against the Defendants on each of the Counts in the Complaint and Demand for Jury Trial (hereinafter the "Complaint"), as filed by BSE Tech in this action. As described below, I believe that the Plaintiff is due a judgment for the following: a) compensatory damages in the

1

amount of $1,330,000.00; b) punitive damages in the amount of $3,990,000.00 under the Massachusetts Consumer Protection Act, M.G.L. c. 93A, §§ 2 and 11; c) attorneys' fees and costs under the Massachusetts Consumer Protection Act, M.G.L. c. 93A, §§ 2 and 11, and as provided in the Affidavit of Philip M. Giordano (hereinafter the "Giordano Affidavit"), as submitted herewith; d) declaratory relief that certain ownership interests in BSE Tech, currently alleged to be held by Asia Tech, are forfeited and the transfer of any and all such interests is hereby rescinded, retroactive to the Closing Date; e) declaratory relief that BSE Tech has no obligation, on an equitable basis, to make a further installment payment of $325,000.00 or any other payments under the Closing Documents to the Defendants; and f) a judgment that the Defendants must indemnify the Plaintiff for the breaches of the agreements underlying this action.

3.      The Plaintiff, BSE Tech LLC, is a Delaware limited liability company registered to do business in the Commonwealth of Massachusetts and maintains offices in Burlington, Massachusetts.

4.      According to my understanding, information and belief, the Defendant, Asia Tech Corporation, is a Delaware corporation which has, or had during the relevant time period, a principal place of business at 5452 Highway 105 West, Suite 201, Conroe, Texas 77304.

5.      According to my understanding, information and belief, the Defendant, Francis Colligan, was an individual who lived in Texas, and during the relevant time period, was President, Director and a principal of Asia Tech.

### I. FORMATION OF BSE TECH AND NEGOTIATIONS WITH THE DEFENDANTS

6.      According to my understanding, information and belief, on or around late 2010, certain officers of Boston Semi Equipment, LLC (hereinafter "BSE"), Douglas Elder and Bryan

Banish, engaged in discussions with the Defendants as to potential business opportunities in the front-end semiconductor resale industry. The negotiations between the parties included a face-to-face meeting on or about November 11, 2010 in Boston, Massachusetts, attended by Elder, Banish and Defendant Colligan. The discussions between BSE and the Defendants focused upon the formation of an entity (which would become BSE Tech), to be funded by a BSE affiliate, and thereupon enter into a transaction with the Defendants. In the transaction, the Defendants agreed to transfer certain semiconductor testing assets, supposedly owned and held by them, in exchange for certain membership interests, or securities, in BSE Tech and certain payments by the Plaintiff.

7. On or about December 22, 2010, BSE Tech was duly organized as a Delaware limited liability company to engage in, *inter alia*, the business of leasing, selling, repositioning and servicing pre-owned semiconductor manufacturing equipment and parts.

## II. THE TRANSACTION AND CLOSING DOCUMENTS

8. On or about February 9, 2011 (the "Closing Date"), BSE Tech entered into certain transactions with the Defendants at a closing (the "Closing"). At the Closing, Plaintiff BSE Tech and Defendants Asia Tech and Colligan executed and delivered various agreements, including, *inter alia*, the following:

    a) a Subscription Agreement for securities of BSE Tech, a copy of which is attached, restated and incorporated by reference herein as **Exhibit A**;

    b) an Asset Purchase Agreement, a copy of which is attached, restated and incorporated by reference herein as **Exhibit B**;

    c) a Bill of Sale, a copy of which is attached, restated and incorporated by reference herein as **Exhibit C**;

d)  an Option Agreement, a copy of which is attached, restated and incorporated by reference herein as **Exhibit D**;

e)  a Consulting Agreement, a copy of which is attached, restated and incorporated by reference herein as **Exhibit E**; and

f)  an Employment Agreement for Colligan, a copy of which is attached, restated and incorporated by reference herein as **Exhibit F** (together with **Exhibits A**, **B**, **C**, **D** and **E**, collectively hereinafter the "Closing Documents").

The Parties also executed and delivered certain other Closing Documents, including but limited to certain consents, which acknowledged and demonstrated the Parties' respective authority and agreement to duly execute the Closing Documents.

9.  According to my understanding, the Closing Documents, as amended, provided for, *inter alia*, the following:

a)  the sale by Defendant Asia Tech of its inventory of semiconductor equipment, parts, and certain other assets (hereinafter the "Assets"), to the Plaintiff, and which Assets were represented by the Defendants as having a certain fair market value in the amount of approximately $2,500,000.00;

b)  the subscription by Defendant Asia Tech to certain securities in the form of membership interests in the Plaintiff, which formed a minority ownership interest in BSE Tech;

c)  the payment by the Plaintiff to Defendant Asia Tech of an advance of future profits, to be paid in two (2) installments;

d)  an option held by the majority owner of the Plaintiff (and a BSE affiliate) exercisable so as to buy-out Defendant Asia Tech's minority position in BSE

Tech at fair market value, prior to the passage of five (5) years from the Closing Date;

e)  a consulting arrangement between Defendant Asia Tech and the Plaintiff, pursuant to which the Defendant was to operate independently on certain non-competing transactions and to share with the Plaintiff in potential profits on certain transactions; and

f)  the employment of Colligan by Plaintiff BSE Tech.

10. According to my understanding and as reflected in the Closing Documents, the Defendants made certain representations and warranties to the Plaintiff in the Asset Purchase Agreement and certain of the other Closing Documents as to the Assets and as to the Defendants' creditors and lienholders.

11. According to my understanding and as reflected in the Asset Purchase Agreement, the Defendants' representations and warranties to BSE Tech included, *inter alia*, the following:

> "§ 4.2:  [Defendant Asia Tech] has all requisite corporate power and authority … to own the [Assets] … to consummate the transactions contemplated hereby … and to perform its obligations hereunder.
>
> § 4.3:  [Defendant Asia Tech] is the sole owner of the [Assets] … [Defendant Asia Tech], and [Defendant Colligan], individually, represent and warrant that [Defendant Asia Tech] has and will transfer good and marketable fee simple title to the [Assets] … and such [Assets] are free and clear of any and all mortgages, pledges, security interests, charges, claims, restrictions, and other encumbrances … The Tools listed on the attached Exhibit A represent all [certain] Tools [Defendant Asia Tech] has the right to remarket … as of the Closing Date. The assets listed on the attached Exhibit B represent all the [Assets] [Asia Tech] has an interest in, of any kind as of the Closing Date, and which the Parties hereto have decided to include on Exhibit B….
>
> * * * *
>
> § 4.5: [Defendant Asia Tech] has no knowledge of any facts in existence as of the Closing Date that may substantially adversely affect [Plaintiff

BSE Tech's] acquisition of the [Assets], or the entering of the transactions as set forth herein which has not been disclosed to [Plaintiff BSE Tech].

\* \* \* \*

§ 4.8: There is no action, order, writ, injunction, judgment or decree outstanding or any claim, suit, litigation, proceeding, labor dispute, arbitral action, governmental audit or investigation (collectively "Actions") pending, or to the knowledge of [the Defendants], threatened or anticipated (a) against, related to or affecting [Defendant Asia Tech], or the [Assets], or (b) seeking to delay, limit or enjoin the transactions contemplated by this Agreement. [Defendant Asia Tech] is not in default with respect to or subject to any judgment, order, writ, injunction or decree of any court or governmental agency, and there are no unsatisfied judgments against [Defendant Asia Tech] or the [Assets].

\* \* \* \*

§ 4.12: No representation or warranty made by [the Defendants] in this Agreement, nor any statement or certificate furnished or to be furnished to [the Plaintiff] pursuant to this Agreement contains any untrue statement of a material fact or omits to state a material fact necessary to make any statement contained in this Agreement misleading.

§ 4.13: Neither this Agreement nor any of the Schedules or Exhibits hereto contains or shall contain … any untrue statement of a material fact or shall omit to state a material fact necessary to make the statements contained herein or therein, in light of the circumstances in which they were made, not misleading, and there is no fact which has not been disclosed to [the Plaintiff] which materially adversely effects or could reasonably be anticipated to materially adversely effect the [Assets], financial condition or results of operations, customer, employee or supplier relations, business condition or prospects of [Defendant Asia Tech].

§ 4.14: [Defendant Asia Tech] represents that the physical equipment portion of the [Assets], as demarcated on Exhibit B, shall have a fair market value on Closing Date of no less than [a certain amount].

\* \* \* \*

§ 7.4: Following the Closing Date, [Defendant Asia Tech] shall pay promptly when due all of the debts and liabilities of [the Defendant], including without limitation any accounts payable not assumed by [the Plaintiff] and any liability of Seller for taxes; provided, however, this covenant shall not apply to that portion (or all) of any debt that [Defendant

Asia Tech] is disputing in good faith and gives prompt notice to [Plaintiff BSE Tech] of such dispute.

* * * *

§ 7.9: After the Closing, [Defendant Asia Tech] shall take all actions reasonably necessary to effect the conveyance of the [Assets] to [Plaintiff BSE Tech] free and clear of all encumbrances and otherwise required by [the Plaintiff]."

See **Exhibit B**, Asset Purchase Agreement, §§ 4.2, 4.3, 4.5, 4.8, 4.12 – 4.14, 7.4 & 7.9.

12. According to my understanding, the Asset Purchase Agreement, as amended, also provided that Defendants were required to indemnify the Plaintiff, as follows:

> "[Asia Tech] shall indemnify, defend, save and hold harmless [BSE Tech], its parents, subsidiaries, and affiliates, and its respective officers, directors, manager, members, employees, agents, attorneys, representatives, and assigns, from and against any and all damages incurred in connection with, arising out of, resulting from or incident to (i) any breach of any representation or warranty, or the inaccuracy of any representation or warranty, made by [Asia Tech] in or pursuant to this Agreement; (ii) any breach of any covenant or agreement made by Seller in or pursuant to this Agreement or any document delivered in connection with this Agreement; (iii) any Excluded Liability; or (iv) any liability imposed on [BSE Tech] by reason of [BSE Tech's] status as transferee of the [Assets]. In addition thereto, [Asia Tech] and [Colligan] shall indemnify … [BSE Tech] of any and all claims related as to any liens or encumbrances to the [Assets]. Any breach of such representation and warranty as to the [Assets], which shall survive termination of this Agreement, and shall result in immediate forfeiture of any and all ownership interests of [Asia Tech] in [BSE Tech], together with any and all legal remedies as may be available."

See **Exhibit B**, Amendment to Asset Purchase Agreement § 7.6.1.

13. Additionally, in accordance with my understanding, the Asset Purchase Agreement also provided, that

> "[i]f any lawsuit or enforcement action is filed against any Party entitled to the benefit of indemnity hereunder, written notice thereof shall be given to the indemnifying Party as promptly as practicable (and in any event within fifteen (15) calendar days after the service of the citation or summons."

See **Exhibit B**, Asset Purchase Agreement § 7.6.4.

14.     According to my understanding and as reflected in the Closing Documents, including the Subscription Agreement, also contain the following choice-of-law and venue provisions:

> "… If any action is brought to enforce, interpret or recover damages for breach of the provisions of this Agreement, then proper venue for said action shall be in the federal courts, sitting in Boston, Suffolk County, Massachusetts, and the parties agree to submit to the jurisdiction of the federal courts, sitting in Boston, Suffolk County, Massachusetts."

See **Exhibit A**, Subscription Agreement, § 5(b)(ii).

15.     On or about February 9, 2011 and in accordance with the Closing Documents, Defendant Asia Tech conveyed the Assets to Plaintiff BSE Tech. See **Exhibit C**, Bill of Sale.

16.     Also on or about February 9, 2011 and in accordance with the Closing Documents, Plaintiff BSE Tech transferred and delivered certain securities, in the form of four hundred-fifty (450) member units, in the Plaintiff to Defendant Asia Tech, which represented a forty-five (45%) percent minority membership interest in BSE Tech.  See **Exhibit A**, Subscription Agreement, § 1(a).

17.     On or about March 15, 2011 and in accordance with the Closing Documents, Plaintiff BSE Tech caused an initial payment of Six Hundred-Seventy-Five Thousand and 00/100 ($675,000.00) dollars (U.S.), representing an advance on future profits, to be paid to Defendant Asia Tech. See **Exhibit B**, Amendment to Asset Purchase Agreement, § 7.4.1.

### III. TEXAS LAWSUIT

18.     I have reviewed certain documents relating to a Texas lawsuit which has been brought against BSE Tech and the Defendants.  According to my understanding, on or about September 16, 2011, an entity known as Longmeadow Properties, LLP, d/b/a Longmeadow Properties ("Longmeadow") brought a civil action against Asia Tech, Colligan, and BSE Tech,

in a Texas state trial court located in Montgomery County, Texas (the "Texas Lawsuit"). The Texas Lawsuit is captioned as *Longmeadow Properties, LLP, d/b/a Longmeadow Properties v. Asia Tech Corporation, BSE Tech LLC, and Francis Colligan*, Cause No. 11-09-10216-CV, in the 359th District Court, Montgomery County, Texas, and is currently pending in that Court. See *Longmeadow Properties, LLP, d/b/a Longmeadow Properties v. Asia Tech Corporation, BSE Tech LLC, and Francis Colligan*, Cause No. 11-09-10216-CV, Original Petition (hereinafter Longmeadow's Original Petition"), a copy of which is attached, restated and incorporated by reference herein as **Exhibit G**.

19. As I understand that in the Texas Lawsuit, Longmeadow alleges it is a creditor of the Defendants and that it is owed approximately $192,329.54. See **Exhibit G**, Longmeadow's Original Petition, at p.6. According to my review of the pleadings, Longmeadow has brought claims against Plaintiff BSE Tech under theories of fraudulent transfer and *de facto* merger, arising from the Closing. See **Exhibit G**, *Id.* at p.6. According to my review of the pleadings, Longmeadow has asserted, in essence, that as the transferee in the Asset Purchase transaction, BSE Tech is liable to it in the Texas Lawsuit. See **Exhibit G**, *Id.* Although Plaintiff and its lawyers have vigorously denied the claims, BSE Tech has been forced to spend thousands of dollars defending itself in the Montgomery County Court in Texas.

20. According to my understanding, information and belief, Longmeadow's petition in the Texas Lawsuit alleges, *inter alia*, the following:

> a) that on or about April 5, 2011 Longmeadow obtained an Arizona judgment against Asia Tech in the amount of $192,329.54. See **Exhibit G**, *Id.* at p.2.

9

b)     that on or about April 20, 2011, Defendant Asia Tech transferred "all assets and inventory used by Defendant Asia Tech in its operations" to the Plaintiff, BSE Tech, purportedly for "less than equivalent value", in order to allegedly hinder Asia Tech's creditors, including Longmeadow. See **Exhibit G**, *Id.* at p.3..

c)     that as a result of the Closing, Defendant Colligan, as the President of Asia Tech, became an "executive officer" of Plaintiff BSE Tech. See **Exhibit G**, *Id.* at p.4.

d)     that, as of the Closing Date, Defendant Asia Tech was purportedly in serious financial difficulty. See **Exhibit G**, *Id.* at p.5.

e)     that Defendant Asia Tech allegedly intended to defraud Longmeadow when it transferred and assigned the Assets to Plaintiff BSE Tech. See **Exhibit G**, *Id.* at p.4.

f)     that, as a result of Defendant Colligan's positions as an officer in both BSE Tech (through his Employment Contract) and in Asia Tech, the Plaintiff BSE Tech allegedly became an "insider" of Asia Tech. See **Exhibit G**, *Id.* at p.4.

g)     that, through Colligan's multiple positions with the Plaintiff and the Defendant Asia Tech, his knowledge of the Longmeadow claim was alleged to be imputed to BSE Tech. See **Exhibit G**, *Id.* at p.4.

h)     that the Closing was allegedly structured as an asset purchase rather than an equity transfer due to Longmeadow's claims against Asia Tech. See **Exhibit G**, *Id.* at p.5.

      i)      that the Plaintiff purportedly provided an Employment Contract to Defendant Colligan after the Closing in order for a certain portion of the consideration for the Assets to be paid, at least in part, to the Defendant instead of to Defendant Asia Tech. See **Exhibit G**, *Id.* at p.5-6.

      j)      and that, Longmeadow contends that, as a matter of Texas law, BSE Tech may be held liable in the Texas Lawsuit to the same extent as Defendant Asia Tech. See **Exhibit G**, *Id.* at p.6.

21. According to my understanding, information and belief, on or about October 3, 2011, when the pleadings from the Texas Lawsuit were served on BSE Tech's registered agent in Texas, Plaintiff BSE Tech first learned of the existence of Longmeadow's claims and/or judgment(s) against the Defendants.

22. BSE Tech had no knowledge of the existence of any claims and/or judgment(s) of Longmeadow until after the purchase of Assets at the Closing, which were not disclosed during due diligence. The Defendants never disclosed to BSE Tech the existence of any claims and/or judgment(s), or even any potential claims and/or judgment(s), of Longmeadow or any other entity, until after the Plaintiff had been served by Longmeadow.

23. On or about October 14, 2011, the Plaintiff delivered, and Defendants received, a claim notice for indemnification in the Longmeadow action. See **Exhibit B**, Amendment to Asset Purchase Agreement § 7.6.1. To date, the Defendants have failed to respond to the Plaintiff's claim notice or to otherwise comply with their obligations to provide indemnification of BSE Tech under the Closing Documents. As a result, the Plaintiff, BSE Tech, has incurred and continues to incur legal fees and expenses in its defense of the Texas Lawsuit.

### IV. MISREPRESENTATIONS AND BREACHES BY
### DEFENDANTS AS TO TEXAS LAWSUIT AND LONGMEADOW

24. According to my understanding, information and belief, Longmeadow's claims against Defendant Asia Tech were known or should have been known to the Defendants prior to the Closing Date. From my review of the documents and according to my understanding, information and belief, the allegations relate to the failure of the Defendants to pay the commercial rent due and owing to Longmeadow under a commercial real estate lease in Arizona. According to my understanding, information and belief, the commercial rent dispute was arbitrated in Arizona prior to the Closing, and an arbitration award was entered in favor of Longmeadow. According to my review of the legal papers and according to my understanding, information and belief, the arbitration award was the basis for the Arizona judgment upon which Longmeadow is suing the Plaintiffs and the Defendants in the Texas Lawsuit.

25. Before and at the Closing, the Defendants failed to disclose the existence of the claims and/or judgment of Longmeadow, or the potential claims and/or judgment(s) of Longmeadow, to the Plaintiff. Before and at the Closing, the Defendants never disclosed the existence of the claims and/or judgment of Longmeadow during due diligence.

26. As stated in Paragraph 17 of this Affidavit, the Plaintiff's payment of the initial advance of $675,000.00 to Defendant Asia Tech was in an amount substantially greater than the amount claimed by Longmeadow in the Texas Lawsuit.

27. By executing the Closing Documents on or about February 9, 2011, and/or by executing certain amendments thereto on or about March 11, 2011, I firmly believe that Defendants Asia Tech and Colligan:

    a) misrepresented that Defendant Asia Tech had all requisite corporate power and authority to own the Assets, to consummate the transactions contemplated by

12

the Asset Purchase Agreement, and to perform its obligations thereunder, when in fact Asia Tech did not. See **Exhibit B**, Asset Purchase Agreement § 4.2;

b)  misrepresented that Defendant Asia Tech was the sole owner of the Assets when it was not; See **Exhibit B**, Asset Purchase Agreement § 4.3;

c)  misrepresented that Defendant Asia Tech had and would transfer good and marketable fee simple title to the Assets, when it did not, and that such Assets were free and clear of any and all mortgages, pledges, security interests, charges, claims, restrictions, and other encumbrances, when they were not. See **Exhibit B**, Asset Purchase Agreement § 4.3;

d)  misrepresented that Defendant Asia Tech had no knowledge of any facts in existence as of the Closing Date that may substantially adversely affect the Plaintiff's acquisition of the Assets, or the entering of the transactions as set forth in the Asset Purchase Agreement which had not been disclosed to the Plaintiff, BSE Tech, when the Defendant did, in fact, have such knowledge. See **Exhibit B**, Asset Purchase Agreement § 4.5;

e)  misrepresented that there was no action, order, writ, injunction, judgment or decree outstanding or any claim, suit, litigation, proceeding, labor dispute, arbitral action, governmental audit or investigation pending (collectively hereinafter "Actions"), or to the knowledge of the Defendants, threatened or anticipated (i) against, related to or affecting Defendant Asia Tech, or the Assets, or (ii) seeking to delay, limit or enjoin the transactions contemplated by the Asset Purchase Agreement; when in fact there were such Action(s) pending and/or threatened or anticipated. See **Exhibit B**, Asset Purchase Agreement § 4.8.

f)      misrepresented that Defendant Asia Tech was not in default with respect to or subject to any judgment, order, writ, injunction or decree of any court or governmental agency, and there were no unsatisfied judgments against Defendants Asia Tech or the Assets, when in fact it was in such default and/or there were unsatisfied judgment(s) against the Defendant or the Assets. See **Exhibit B**, Asset Purchase Agreement § 4.8;

g)      misrepresented that the representations and warranties of the Defendants under the Asset Purchase Agreement, and any statements or certificates furnished by them pursuant to the Asset Purchase Agreement, contain no untrue statements of material fact and do not omit any material fact necessary to make any statement in the Asset Purchase Agreement a misrepresentation, when in fact they do contain such untrue statements and/or omissions of material fact. See **Exhibit B**, Asset Purchase Agreement § 4.12;

h)      misrepresented that there was no fact which had not been disclosed to the Plaintiff which materially adversely affected or could reasonably have been anticipated to materially adversely affect the Assets, financial condition or results of operations, customer, employee or supplier relations, business condition or prospects of Defendant Asia Tech, when in fact there were such facts. See **Exhibit B**, Asset Purchase Agreement § 4.13;

i)      misrepresented that the physical equipment portion of the Assets had a certain fair market value at the time of the Closing, when in fact the Assets did not have such a fair market value. See **Exhibit B**, Asset Purchase Agreement § 4.14;

14

j) misrepresented that following the date of the Closing, Defendant Asia Tech would pay promptly, when due, all of its debts and liabilities, which included any debts to Longmeadow, when in fact it did not pay promptly such debts and liabilities, despite its ability to do so. See **Exhibit B**, Asset Purchase Agreement § 7.4; and

k) misrepresented that, after the Closing, Defendant Asia Tech would take all actions reasonably necessary to effect the conveyance of the Assets to the Plaintiff, free and clear of all encumbrances and otherwise required by BSE Tech, when in fact it did not take such actions. See **Exhibit B**, Asset Purchase Agreement § 7.9.

### V. MISREPRESENTATIONS AS TO ASSETS AS TRANSFERRED TO PLAINTIFF BY DEFENDANTS

28. Since the Closing and the filing of the Texas Lawsuit, the Plaintiff has determined that the Defendants also materially misrepresented the value of the Assets to BSE Tech. According to my understanding, information and belief, in September and October 2011, BSE Tech's employees and an independent contractor to BSE Tech examined and reviewed the Assets and the inventory list, as attached to the Bill of Sale, and determined that such valuation was significantly and materially lower than as represented by the Defendants.

29. At the Closing, the Defendant represented that the Assets were valued at $2,500,000.00. Based upon its subsequently obtained understanding of the Asia Tech inventory and analysis of the market, BSE Tech ultimately assigned a fair market value of $850,740.00 in December 2011 to the Assets retroactive to the time of Closing. After the Closing and the service of process in the Texas Lawsuit, the Plaintiff conducted a further review of the inventory in late 2012 and discovered that the initially assigned fair market value of $850,740 was

significantly higher than the actual value of the Assets. As a result, the Assets were determined to have a value significantly less than $850,740.00, and a write off of approximately $655,000.00 was taken by BSE Tech, reducing the value of the then remaining Assets to $0.

30.     I firmly believed that BSE Tech was fraudulently induced to enter into the transaction by the Defendants' misrepresentation at the Closing that the Assets had a fair market value of $2,500,000.00. Although at the time of the Closing, the Plaintiff believed that the Assets had a fair market value of $2,500,000.00, BSE Tech subsequently learned of the Defendants' false statements which resulted in the assignment of an initial value of $850,740.00 and was subsequently forced to take a write-off of $655,000.00. Additionally, the Plaintiff paid $675,000.00 to the Defendants as the initial installment payment for Assets which were virtually worthless.

31.     As a result, on behalf of the Plaintiff, I believe that the Plaintiff has suffered compensatory damages of $655,000.00, as the write-off of the remaining worthless Assets, plus $675,000.00 from its initial installment payment to the Defendants, for total damages of $1,330,000.00. Additionally, according to my understanding of the Massachusetts Consumer Protection Act, I believe that treble damages are appropriate in this case for a total amount of $3,990,000.00. Furthermore, I firmly believe that the Plaintiff has justifiably not made the second installment of $325,000.00 and request that, by its Judgment in this action, this Court affirm that the $325,000.00 is not due and owing to the Defendants. See **Exhibit B**, Amendment to Asset Purchase Agreement § 7.4.1.

32.     After the Closing, the Defendants failed and/or refused to deliver certain of the equipment and tools that were required to be included in the Assets, and claimed that certain undisclosed third-parties had "ownership rights" over these tools and equipment. I firmly

believe that the Defendants misrepresented such Assets to BSE Tech and failed to properly disclose the existence of these supposed ownership rights of these third-parties.

33.     Since the Closing, I also firmly believe that the Defendants' description of certain equipment and tools comprising part of the Assets also omitted significant and material facts, particularly as to the Assets' value and/or marketability. In several respects, the details of the Assets were significantly different from the information provided in due diligence and as understood at the Closing. I firmly believe that the Defendants knew, or should have known of, the deficiencies in the Assets during the November 11, 2010 meeting in Boston, and prior to the Closing, and yet the Defendants nevertheless concealed and/or otherwise failed to disclose such deficiencies to BSE Tech.

34.     By the unfair and deceptive trade practices of the Defendants, the Plaintiff has been forced to pay attorneys' fees and costs for the prosecution of the instant action and the defense of the Texas Lawsuit, which, according to my understanding of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, §§ 2 and 11, should be awarded to the Plaintiff. See generally, Giordano Affidavit, a copy of which is attached, restated and incorporated by reference herein as **Exhibit H.**

### VI. DAMAGES AND DECLARATORY RELIEF

35.     In my opinion, the Plaintiff materially performed all of its obligations to the Defendants under the Closing Documents.

36.     I believe that, as a result, of the misrepresentation, violations and breaches by the Defendants that the Plaintiff, BSE Tech, must be granted relief, as a follows:

   a)     the entry of judgment for declaratory and equitable relief that Defendant Asia Tech forfeits any and all membership interests, including but not limited to

the four-hundred-fifty (450) member units, in BSE Tech, be rescinded in all respects. I firmly believe that Defendant Asia Tech must be required to forfeit any and all right title and interest to the BSE Tech membership interests, retroactive to the Closing Date.

b)   the entry of judgment for declaratory relief that the Defendants are obligated to indemnify the Plaintiff, BSE Tech, for any and all liability arising from the Texas Lawsuit, including but not limited to its attorneys' fees and costs.

c)   the entry of judgment for declaratory relief that the Closing Documents are legally binding upon Defendants, and that BSE Tech is excused of any and all obligations to Defendants under the Closing Documents, including but not limited to any obligation under the Closing Documents to deliver any further payments to the Defendants as arising from the Transaction, such as any advance of future profits, pursuant to Section 7.4.1 of the Asset Purchase Agreement, as amended, including but not limited to the payment of $325,000.00 as a second installment, or any other distributions, profits, payments, consideration or other benefits or assets.

d)   the entry of judgment for compensatory damages in the amount of $1,330,000.00, which reflects the write-off of the Assets caused by the misrepresentations of the Defendants, plus the initial advance of future profits as paid to the Defendants after the Closing, pursuant to Section 7.4.1 of the Asset Purchase Agreement, as amended.

e)   the entry of judgment for treble damages under the Massachusetts Consumer Protection Act, M.G.L. c. 93A, §§ 2 and 11, in the amount of

$3,990,000.00, which reflects trebled damages, on a punitive basis, for the unfair and deceptive trade practices perpetrated by the Defendants against the Plaintiff.

f)  the award of attorneys' fees and costs, under the Massachusetts Consumer Protection Act, M.G.L. c. 93A, §§ 2 and 11 for the prosecution of the instant action and the defense of the Texas Lawsuit, as paid by BSE Tech.

and

g)  such other relief as the Court deems appropriate and just.

Signed under the pains and penalties of perjury, this 25th day of October, 2013.

_____
Kent D. Shoot