## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
|                                     )
| **BSE TECH LLC,**                   )
|                                     )
|        **Plaintiff,**               )
|                                     )        **Civil No.**
|        **v.**                       )        **13-10972-FDS**
|                                     )
| **ASIA TECH CORPORATION and**       )
| **FRANCIS COLLIGAN,**               )
|                                     )
|        **Defendants.**              )
|                                     )
_____)

## MEMORANDUM AND ORDER ON
## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

**SAYLOR, J.**

This is a contract dispute.  Plaintiff BSE Tech LLC, has brought suit against defendants

Asia Tech Corporation and Francis Colligan, contending that defendants made material

misrepresentations to it when entering into several contracts between the parties.  Both

defendants have defaulted; the issue is ascertaining the amount of damages to be assessed.  The

Court must first determine whether the complaint states a claim for relief under the

Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A.  The Court must then

consider the amount of compensatory damages to be awarded and the extent, if any, to which

enhanced damages, attorney's fees, costs, and declaratory relief should be awarded.

For the reasons set forth below, the Court concludes that the complaint properly states a

claim under Chapter 93A, and plaintiff is entitled to multiple damages.  The Court also finds that

plaintiff is entitled to declaratory relief, but not attorneys' fees or costs.

# I.      Background

The relevant facts are summarized below as set forth in the complaint unless otherwise noted.[1]

## A.      Creation of BSE Tech

Plaintiff BSE Tech LLC is a Delaware limited liability company registered to do business in Massachusetts.  Defendant Asia Tech Corporation is a Delaware corporation with a principal place of business in Conroe, Texas.  Defendant Francis Colligan is the president, director, and sole shareholder of Asia Tech.

In 2010, Colligan entered into discussions with several other individuals concerning a deal involving the creation of an entity, which would become BSE Tech, in the semiconductor resale industry.  On November 11, 2010, they met in Boston, Massachusetts, to discuss the deal. On December 22, 2010, BSE Tech was organized as a Delaware limited liability company to engage in the business of leasing, selling, repositioning, and servicing pre-owned semiconductor manufacturing equipment and parts.

On February 9, 2011, BSE Tech entered into several agreements with Asia Tech and Colligan.  These agreements provided for (1) the subscription by Asia Tech to securities, in the form of a 45 percent minority interest in BSE Tech; (2) the sale of a certain portion of Asia Tech's inventory with a market value of $2,500,000; (3) the payment of an advance of future

---

[1] Because defendants have defaulted for failure to plead or otherwise defend, they are "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which the damages will be calculated."  *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 63-63 (1st Cir. 2002) (quoting *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999)).  Before entering a default judgment, a court may examine the complaint, taking all well-pleaded factual allegations as true, to determine its legal sufficiency.  *Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1, 2 (1st Cir. 2002); *Quirindongo Pacheco v. Rolon Morales*, 953 F.2d 15, 16 (1st Cir. 1992).  On a motion for default judgment, a court may also consider any affidavits or evidence on the record.  *See KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 17-20 (1st Cir. 2003).

profits by BSE Tech to Asia Tech, paid in two installments of $675,000 and $325,000; (4) an option for BSE Tech's majority owner to buy out Asia Tech's securities after five years; (5) a consulting arrangement allowing Asia Tech, as a consultant of BSE Tech, to operate independently as to certain non-competing transactions and to share profits on certain joint transactions; and (6) the employment of Colligan by BSE Tech.  (Shoot Aff. ¶¶ 9, 15, 17, 29).

Asia Tech made various representations and warranties to BSE Tech as part of these agreements.  For example, Asia Tech warranted that the assets it sold to BSE Tech were worth $2,500,000 and that there were no claims, lawsuits or unsatisfied judgments against it that would delay, limit, or enjoin the transactions in the agreements.  The parties also agreed to indemnify each other against any damage incurred by the breach of any representation or warranty in the agreements.

On February 9, 2011, Asia Tech conveyed the agreed-upon assets to BSE Tech, and BSE Tech transferred to Asia Tech the agreed-upon 45 percent minority interest in the company. (Shoot Aff. ¶¶ 15-16).  On March 15, 2011, BSE Tech paid Asia Tech $675,000, the first installment of the advance on future profits.  (Shoot Aff. ¶ 17).

### B.    Value of Asia Tech's Assets

Asia Tech and Colligan misrepresented the value of the assets they sold to BSE Tech in the agreements.  In December 2011, based on a review of the assets and an analysis of the market, BSE Tech assigned those assets a fair market value of $850,740.  (Shoot Aff. ¶ 29). After a further review in late 2012, the assets were determined to have a value significantly less than $850,740, and BSE Tech took a write-down of approximately $655,000 on the assets. (Shoot Aff. ¶ 29).  The value of the remaining assets was reduced to $0.  (Shoot Aff. ¶ 29).

C.    **The Texas Lawsuit**

On September 16, 2011, an entity known as Longmeadow Properties, LLP, brought a civil action against Asia Tech, Colligan, and BSE Tech in state court in Montgomery County, Texas.  That suit is currently pending, and is captioned *Longmeadow Properties, LLP, d/b/a/ Longmeadow Properties v. Asia Tech Corporation, BSE Tech LLC, and Francis Colligan*, No. 11-09-10216-CV.  In that case, Longmeadow alleges it is a creditor of Asia Tech and Colligan, and that it is owed $192,329.54.  The lawsuit also brings claims against BSE Tech under theories of fraudulent transfer and *de facto* merger, arising from the agreements between Asia Tech, Colligan, and BSE Tech in February 2011.

Longmeadow specifically alleges that it obtained a judgment in Arizona against Asia Tech in the amount of $192,329.54.  It also alleges that Asia Tech fraudulently transferred assets to BSE Tech to prevent Longmeadow from collecting that money.

BSE Tech has incurred, and continues to incur, legal fees and expenses in defense of Longmeadow's lawsuit.  It first learned of the Arizona judgment on October 3, 2011, when the complaint in Longmeadow's lawsuit was served on its registered agent in Texas. Longmeadow's claims were not disclosed to BSE Tech by Asia Tech or Colligan before that time.

II.    **Procedural Background**

Plaintiff filed this case on April 18, 2013.  The complaint alleges eight causes of action: (1) violations of federal securities laws; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) fraud; (5) negligent misrepresentation; (6) gross negligence; (7) negligence; and (8) violations of the Massachusetts Consumer Protection Act,

Mass. Gen. Laws ch. 93A, §§ 2 and 11.  The complaint also requests declaratory relief under the various agreements between the parties.

On August 26, 2013, the Court entered a default as to both defendants under Fed. R. Civ. P. 55(a).  Plaintiff filed a motion for default judgment on October 28, 2013.  The motion requests (1) compensatory damages of $1,330,000 with 12 percent pre-judgment interest; (2) $3,990,000 in punitive damages under Mass. Gen. Laws ch. 93A, §§ 2 and 11; (3) $34,400 in attorneys's fees and $631.80 in costs; (4) declaratory relief that defendant Asia Tech has forfeited its 45 percent minority ownership of BSE Tech; (5) declaratory relief that plaintiff has no obligation to pay the remaining $325,000 under its agreements with defendants; and (6) declaratory relief that defendants should indemnify plaintiff for the Longmeadow action pending in state courts.[2]

## III.   **Analysis**

A default judgment may be entered without a hearing under Fed. R. Civ. P. 55(a) if "a court has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object."  *In re The Home Restaurants, Inc.*, 285 F.3d 111, 114 (1st Cir. 2002).  The Court has federal-question jurisdiction under 28 U.S.C. § 1331 because plaintiff asserts a claim for securities violations under 15 U.S.C. § 78aa, and supplemental jurisdiction over the related state-law claims under 28 U.S.C. § 1367.[3]  Defendants have had since October 28, 2013, to respond to the motion for default judgment.  Accordingly, the Court will consider whether the allegations in

---

[2] Although the complaint includes multiple claims, plaintiff only seeks relief under Mass. Gen. Laws ch. 93A.  No other damages will be considered.  *See Hooper-Haas v. Ziegler Holdings, LLC*, 690 F.3d 34, 40 (1st Cir. 2012) (striking certain relief given to plaintiffs after default judgment because they did not request that relief).

[3] It is unclear whether the Court, as plaintiff alleges, has diversity jurisdiction in this case, as plaintiff is a limited liability company and has not disclosed the citizenship of its members.

the complaint state a specific, cognizable claim for relief.

A. **Chapter 93A Violations**

Under Chapter 93A, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws ch. 93 A, § 2(a). "Conduct is unfair or deceptive if it is 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or 'immoral, unethical, oppressive, or unscrupulous.'" *Cummings v. HPG Int'l Inc.*, 244 F.3d 16, 25 (1st Cir. 2001) (quoting *PMP Assoc. Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975)).

Although plaintiff did not specify what unfair or deceptive act underlies its Chapter 93A claim, such claims can generally be substantiated by proof of fraudulent misrepresentation. *See Rodi v. Southern New England Sch. of Law*, 532 F.3d 11, 19 (1st Cir. 2008). "To prevail on a claim of fraudulent misrepresentation under Massachusetts law, the plaintiff must show that the defendant 'made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage.'" *Eureka Broadband Corp. v. Wentworth Leasing Corp.*, 400 F.3d 62, 68 (1st Cir. 2005) (quoting *Russell v. Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 458 (2002)).

Plaintiff alleges two distinct fraudulent misrepresentations: first, that defendants misrepresented the value of their assets; and second, that they misrepresented that the assets were not the subject of any claim or lawsuit. As to the first, the record shows that the assets defendants claimed were worth $2,500,000 were actually worth virtually nothing, and that defendants knew this before they entered into the contracts with plaintiff. As to the second,

6

defendants represented that the assets they were selling to plaintiff were not subject to any claims or lawsuits by third parties, even though Longmeadow had already received a judgment against defendants in Arizona before defendants entered into their contracts with plaintiff. Plaintiff entered into those contracts because of its reliance on defendants' misrepresentations. Assuming, as the Court must, the truth of plaintiff's allegations, plaintiff has properly established misrepresentations sufficient to sustain a Chapter 93A violation.[4]   Accordingly, default judgment will be entered in plaintiff's favor.

### B.   Damages

#### 1.   Compensatory Damages

Compensatory damages are authorized for violations of Chapter 93A.  Mass. Gen. Laws ch. 93A, § 11.  Plaintiff seeks compensatory damages in the amount of $1,330,000; $655,000 from its write-down of the assets it bought from defendants and $675,000 from the advance payment it gave defendants.  (Shoot. Aff. ¶ 31).  Both amounts are losses from plaintiff's reliance on defendants' representations that its assets were worth $2,500,000.  Accordingly, plaintiff will be awarded $1,330,000 in compensatory damages.  *See* Restatement (Second) of Torts § 537 (1977) ("The recipient of a fraudulent misrepresentation can recover against its maker for pecuniary loss resulting from it . . . .").

---

[4] A Chapter 93A violation also requires that "the actions and transactions constituting the alleged . . . unfair or deceptive act or practice occurred primarily and substantially within the commonwealth."  Mass. Gen. Laws ch. 93A, § 11.  Here, the alleged fraudulent representations were made when negotiating the contracts during a conference in Boston, Massachusetts, on November 11, 2010.  (Compl. ¶ 11).  In addition, plaintiff's principal place of business was Burlington, Massachusetts.  (Mot. for Default J., Ex. A).  Accordingly, it appears that the "center of gravity of the circumstances that give rise to the claim is primarily and substantially in the Commonwealth," *Kuwaiti Danish Computer Co. v. Digital Equipment Corp.*, 438 Mass. 459, 473 (2003).

### 2. <u>Multiple Damages</u>

A plaintiff can recover between double and treble damages if a defendant committed a willful or knowing violation of Mass. Gen. Laws ch. 93A, § 2.  Mass. Gen. Laws ch. 93A, § 11. The complaint alleges that defendants knew they were making fraudulent misrepresentations, and plaintiff seeks treble damages.

Multiple damages are mandatory in the event of a willful or knowing violation of Chapter 93A, Section 2.  *Id.*  However, the Court has discretion to award anywhere between double or treble damages.  *Id.*  Because the record is sparse as to the full extent of defendants' knowledge and intent, the Court will award enhanced damages in the amount of $1,330,000, or equal to the actual damages sustained.[5]

### 3. <u>Pre-Judgment Interest</u>

Plaintiff requests pre-judgment interest of 12 percent from the date of the filing of the complaint to the date of the default judgment.  Pre-judgment interest must be awarded on "all actions based on contractual obligations, upon a . . . order for judgment for pecuniary damages." Mass. Gen. Laws ch. 231, § 6C.  As this case is based on fraudulent misrepresentations made in connection with contractual obligations, plaintiff will be awarded pre-judgment interest of 12 percent from April 18, 2013 to the date of this judgment.[6]

---

[5] Under Chapter 93A, each defendant can be required to pay a separate multiple damage award for a willful or knowing violation.  *See International Fidelity Ins. Co. v. Wilson*, 387 Mass. 841, 859 (1983) (assessing a double damage award against one defendant and a treble damage award against the second according to their relative liability).  However, the absence of information about defendants' willfulness or knowledge makes such an award in this case unreasonable.

[6] This interest will accrue solely on the $1,330,000 portion of the award, and not the multiple damages. *City Coal Co. of Springfield, Inc. v. Noonan*, 434 Mass. 709, 715-16 (2001).

4.      **Attorney's Fees and Costs**

Under Chapter 93A, a plaintiff "shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and costs." Mass. Gen. Laws ch. 93A, § 11. Plaintiff, as the party seeking attorneys' fees and costs, has the burden of producing materials that support its request, even when all defendants have defaulted. *See Conservation Law Foundation, Inc. v. Roland Teiner Co., Inc.*, 832 F. Supp. 2d 102, 104 (D. Mass. 2011) (evaluating affidavits for motion for attorneys' fees after defendants defaulted). Plaintiff has submitted an affidavit claiming $34,000 in attorneys' fees and $631.80 in costs. (Giordano Aff. ¶ 3).

Plaintiff has offered no other materials to support its request for attorneys' fees and costs. The lack of supporting materials can be fatal to a request for attorneys' fees. *See Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (holding that "the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance."). Some type of record is especially important in this case, where it is unclear whether the requested attorneys' fees account solely for work in this litigation or are duplicative of work done in other, related lawsuits. *See Haddad v. Wal-Mart Stores, Inc.*, 455 Mass. 1024, 1027 (2010) (reducing fees based on redundant work).[7] In addition, there has been no evidence of what rate the attorneys in this case charged. Even at a high rate of $300 per hour, plaintiff's lawyers would had to have worked almost 115 hours to bill $34,400 in attorneys' fees. It is unclear why it would take this much time to file a complaint, serve defendants, file a motion for an entry of default, and file a motion for a default judgment. *See*

_____

[7] When determining the reasonableness of an award of attorneys' fees, courts in the First Circuit look to both federal and Massachusetts precedent. *Joyce v. Town of Dennis*, 720 F.3d 12, 26 (1st Cir. 2013).

*Haddad*, 455 Mass. at 1024 (reducing attorneys' fees due to unreasonableness).  Plaintiff's costs are likewise not documented.

Accordingly, plaintiff's request for attorneys' fees and costs will be denied.

**B.     Declaratory Relief**

"The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, empowers a federal court to grant declaratory relief in a case of actual controversy."  *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530, 534 (1st Cir. 1995).   "The Act 'neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies."  *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 39 (1st Cir. 2006) (quoting *El Dia, Inc. v. Hernandez Colon*, 963 F.3d 488, 492 (1st Cir. 1992)).  "Consequently, federal courts retain substantial discretion in deciding whether to grant declaratory relief."  *Ernst & Young*, 45 F.3d at 534.  A court "should consider the totality of the circumstances" when deciding whether to award a declaratory judgment.  *El Dia*, 963 F.2d at 494.

Plaintiff has requested declaratory relief that (1) defendant Asia Tech has forfeited its interest in BSE Tech, (2) plaintiff has no obligation to pay the remaining $325,000 to defendants, and (3) that defendants should indemnify plaintiff for any expenses incurred in the Longmeadow lawsuit.

This case does not involve difficult questions of law, and the Court sees no reason why declaratory relief cannot be awarded.  Accordingly, the Court will grant plaintiff's requests for declaratory judgment.

**VI.**     **Conclusion**

For the foregoing reasons, judgment shall enter for plaintiff as follows:

1.      Plaintiff is awarded $1,330,000 in compensatory damages and $1,330,000 in

multiple damages, for a total of $2,660,000, against both defendants jointly and

severally.

2.      Declaratory relief shall enter, declaring that

(1)     the ownership interests held by Asia Tech have been forfeited to BSE

Tech;

(2)     BSE Tech has no obligation to pay defendants a further installment of

$325,000 as contemplated by the contracts between them; and

(3)     defendants shall indemnify BSE Tech for the action pending in Texas state

court, captioned as *Longmeadow Properties, LLP, d/b/a Longmeadow*

*Properties v. Asia Tech Corporation, BSE Tech LLC, and Francis*

*Colligan*, No. 11-09-10216-CV, as outlined in the contracts between them.

The clerk is directed to enter judgment for plaintiff in the amount of $2,660,000, with

prejudgment interest of 12 percent on the compensatory damages as required by law.

**So Ordered.**


                                                 /s/ F. Dennis Saylor
                                                F. Dennis Saylor IV
Dated: January 29, 2014                         United States District Judge